UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Sulzer Spine-Tech, Inc. and
Sulzer Spine-Tech Surgical, Inc.,

Plaintiffs,

v.

MEMORANDUM OPINION
AND ORDER
Civil No. 00-2501(MJD/SRN)

Medtronic Sofamor Danek, Inc. and
Medtronic Sofamor Danek U.S.A., Inc.,

Defendants.

---

Ronald J. Lee and Kristen M. Ludgate, Faegre & Benson, LLP, for and on behalf of Plaintiff.

William Z. Pentelovitch, Wayne S. Moskowitz and Margaret C. Hobday, Mason Edelman Borman & Brand, LLP, for and on behalf of Defendants.

---

INTRODUCTION

Before the Court is the motion of Plaintiffs Sulzer Spine-Tech, Inc. and Sulzer Spine-Tech Surgical, Inc. ("Spine-Tech") for a temporary restraining order against Defendants Medtronic Sofamor Danek, Inc. and Medtronic Sofamor Danek U.S.A., Inc. ("Medtronic"), temporarily enjoining Medtronic from employing a former Spine-Tech employee, Kris Huber, or any other Spine-Tech employee when employment with Medtronic will result in a breach of such employee's employment agreement.

FILED FEB 27 2001
FRANCIS E. DOSAL, CLERK
JUDGMENT ENTD
DEPUTY CLERK

## BACKGROUND

Spine-Tech's motion for temporary injunctive relief has been brought within the context of a previously filed action, in which Spine-Tech alleges Medtronic has engaged in tortious interference with contract and unfair competition by tortiously raiding Spine-Tech of its employees. Complaint ¶ 16.

Spine-Tech alleges that both Spine-Tech and Medtronic are involved in the design, manufacture and sale of spinal implants and instruments for the surgical treatment of degenerative disk disease and other spinal conditions. Pfost Aff., ¶ 2. Spine-Tech further alleges that in its effort to build its own sales force at the expense of its competitor, Medtronic has unlawfully induced a number of Spine-Tech sales representatives to breach their employment agreements with Spine-Tech by going to work for Medtronic. Complaint ¶ 10. Spine-Tech now alleges that Medtronic has stepped up its efforts to raid Spine-Tech employees by going after its Regional Sales Managers.

Kris Huber was a Regional Manager for Spine-Tech, covering the Southern Region, which includes Texas, New Mexico and the northern part of Louisiana. On January 8, 2001, Huber informed Bill Pfost, Spine-Tech's West Area Sales Director, that he was resigning his position at Spine-Tech to assume a similar position at Medtronic in Oregon. Pfost Aff., ¶¶ 4 and 6. Even though this action was pending at the time Huber provided his notification, no evidence has been presented to the Court that shows Spine-Tech informed Huber that it believed Huber's employment with Medtronic would result in a breach of his employment

agreement. Huber thereafter submitted a letter of resignation, and his employment with Spine-Tech ended on January 26, 2001. Pfost Aff., ¶ 6.

Upon commencement of employment with Spine-Tech, Huber signed an employment agreement[1] that contained non-disclosure and non-compete clauses.

> 7. Confidential Information
>
> Except as specifically permitted by an authorized officer of the Company or by written Company policies, the Employee will never, either during or after his employment by the Company, use Confidential Information for any purpose other than the business of the Company or disclose it to any person who is not also an employee of the Company. When the Employee's employment with Company ends, the Employee will promptly deliver to the Company all record and any compositions, articles, devices, apparatus and other items that disclose, describe or embody Confidential Information, including all copies, reproductions and specimens of the Confidential Information in the Employee's possession, regardless of who prepared them and will promptly deliver any other property of the Company in the Employee's possession, whether or not Confidential Information.
>
> 8. Competitive Activities. The Employee agrees that, during the term of employment with the Company and for a period of one (1) year after employment with the Company ends, the Employee will not alone, or in any capacity with another firm,
>
> (i) directly or indirectly engage in any commercial activity that competes with the Company's business, as the Company has conducted it during the five years before the Employee's employment with the Company ends, within any state in the United States or within any country in which the Company directly or indirectly markets or services products or provides services,
>
> (ii) in any way interfere or attempt to interfere with the company's relationships with any of its current or potential customers, . . .

[1] Medtronic notes that the employment agreement at issue was executed by Spine-Tech, Inc., an entity that is not a named-party to the instant action. This issue need not be addressed, however, to determine the instant motion.

Pfost Aff., Ex. A, p. 5.

Spine-Tech alleges that Medtronic had knowledge of Huber's employment agreement with Spine-Tech, yet lured Huber into its employ promising to indemnify him against an action for breach of such contract, plus a $50,000 signing bonus and an additional $50,000 relocation allowance. Spine-Tech further alleges that as a regional manager for Spine-Tech, Huber was given broad access to and knowledge of Spine-Tech's confidential and proprietary information, such as marketing plans and strategies for his region and other regions in the West Area, which includes Oregon, and that such information is relevant to his position at Medtronic. Spine-Tech further alleges that in December 2000, Huber attended a sales meeting in California, and while there took copious notes. Although it has asked Huber to return such notes, Spine-Tech asserts that Huber has refused to do so.

Through its motion for a temporary restraining order, Spine-Tech asks that the Court specifically enjoin Medtronic from: employing Huber, in any capacity in which Huber would be engaging in sales or other commercial activity that compete with Spine-Tech in their West Area, which includes California, Oregon, Washington, Alaska, Hawaii, Idaho, Nevada, Utah, Arizona, Wyoming, Colorado, New Mexico and Texas; inducing Huber to use or disclose confidential information; and soliciting or hiring any other Spine-Tech employee to work in a position that would be in violation of that employee's non-compete agreement with Spine-Tech.

Standard

The Eighth Circuit has established that the following factors are to be used when considering a motion for preliminary injunctive relief:

> [W]hether a preliminary injunction should issue involves consideration of (1) the threat of irreparable harm to the movant; (2) the state of balance between this harm and the injury that granting the injunction will inflict on other parties litigant; (3) the probability that movant will succeed on the merits; and (4) the public interest.

Dataphase Sys., Inc. v. C. L. Sys., Inc., 640 F.2d 109, 113 (8th Cir. 1981); accord Medtronic, Inc. v. Gibbons, 527 F. Supp. 1085, 1090 (D. Minn. 1981) aff'd, 684 F.2d 565 (8th Cir. 1982).

Spine-Tech alleges that it has submitted to the Court sufficient evidence to support a likelihood that it will succeed on the merits of its tortious interference with contract claim. The elements of a tortious interference claim are: 1) the existence of a contract; 2) the alleged wrongdoer's knowledge of the contract; 3) intentional procurement of its breach; 4) without justification; and 5) damages. Kallok v. Medtronic, Inc., 573 N.W.2d 356, 362 (Minn. 1998).

Medtronic argues that Spine-Tech cannot establish a likelihood of success on the merits of its tortious interference claim because the noncompete agreement at issue is invalid. In Minnesota, courts look upon noncompetition agreements with disfavor and scrutinize such agreements carefully because they are agreements in partial restraint of trade. National Recruiters, Inc. v. Cashman, 323 N.W.2d 736, 740 (Minn. 1982). The reasonableness of such an agreement is for the Court to determine.

> The test applied is whether or not the restraint is necessary for the protection of the business or the good will of the employer, and if so, whether the stipulation has imposed upon the employee any greater restraint than is reasonably necessary to protect the employer's business, regard being had to the nature and character of the employment, the time for which the restriction is imposed, and the territorial extent of the locality to which the prohibition extends.
>
> Restrictions which are broader than necessary to protect the employer's legitimate interest are generally held to be invalid, and the determination of the necessity for the restriction is dependent upon the nature and extent of the business, the nature and extent of the service of the employee, and other pertinent conditions.

Bennett v. Storz Broadcasting Co., 270 Minn. 525, 534, 134 N.W.2d 892, 899 (1965).

In this case, Huber's noncompete agreement with Spine-Tech prevents him from engaging in any competitive activity for one year after employment with Spine-Tech ends. Competitive activity, as defined by the noncompete agreement, restricts Huber from working for any competitor of Spine-Tech anywhere Spine-Tech does business, and from working on any product.

Medtronic argues that this agreement is overly broad, given Huber's role as a Regional Sales Manager for Spine-Tech. When dealing with employees engaged in the sale of a product, Medtronic argues that the noncompete should be limited to the type of product sold by the employee for the employer, and in the geographic area the employee was assigned to. Spine-Tech impliedly concedes that the noncompete is overly broad and asserts that the Court should "blue pencil" the agreement by interpreting it to restrict Huber from working in any territory encompassed by Spine-Tech's West Area, which includes Oregon.

Even if the Court were to "blue pencil" the noncompete to prevent Huber from working for Medtronic in Oregon, which it will not do, Spine-Tech nonetheless fails to show that such restriction is necessary to protect its business or its goodwill. The undisputed facts show that Huber never covered Oregon as a sales territory while he worked for Spine-Tech. Thus, there is no showing that Huber will be forced to call on Spine-Tech customers in Oregon. See, Lexis-Nexis v. Beer, 41 F. Supp. 2d 950, 956 (D. Minn. 1999)(finding noncompete agreement's geographic restrictions invalid as overly broad, given inherent territorial nature of employee customer contacts); Klick v. Crosstown State Bank of Ham Lake, 372 N.W.2d 85, 88 (Minn. Ct. App. 1985)(where geographic limitations prevented employee from working outside his prior trade area, noncompete found to be overly broad). Huber declared in his affidavit that he has not called on Spine-Tech customers as a Medtronic employee, and that to date, he has only contacted existing Medtronic customers. Huber Aff. ¶¶ 11 and 15.

Further, Spine-Tech has not sufficiently established 1) that the information Huber had access to was confidential; or 2) that Huber will be forced to disclose any confidential Spine-Tech information as a sales manager for Medtronic in Oregon. In addition, Medtronic has submitted affidavits establishing that Huber has returned all Spine-Tech information and notes he possessed to Spine-Tech in a timely fashion. At this time, there is no evidence to rebut this evidence. Without evidence that Huber possessed or had access to confidential information or that such information was unlawfully disclosed or that such disclosure is inevitable, this

Court will not presume irreparable harm. See, Rosewood Mortgage Corporation v. Hefty, 383 N.W.2d 456, 460 (Minn. Ct. App. 1986)(abuse of discretion to find irreparable harm from competitive activity of a former employee absent evidence to support such inference).

Because Spine-Tech has failed to establish that the noncompete agreement with Huber is valid, or that it will suffer irreparable harm if the injunction is not issued, the Court finds that the balance of harms and the public interest do not support the injunctive relief sought.

IT IS HEREBY ORDERED that Spine-Tech's Motion for a Temporary Restraining Order is DENIED.

Date: Feb. 27, 2001

Michael J. Davis
United States District Court